UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SAYSHA RAYBURN and
SIENNA WILKINSON,

    Plaintiffs,

v.                                              Case No: 8:16-cv-159-T-17MAP

MOOSE INTERNATIONAL, INC. and
LAKE WALES LODGE '35; 2391, LOYAL
ORDER OF MOOSE, INC.,

    Defendants.

_____

**ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS**

This cause came before the Court pursuant to the *Lake Wales Lodge #2391, Loyal Order of the Moose, Inc.'s Motion to Dismiss and to Convert into a Motion for Summary Judgment* (Doc. No. 15) (the "**Lodge Motion**") and the *Moose International, Inc.'s Motion to Dismiss* (Doc. No. 16) (the "**Moose Motion**") (collectively, the "**Motions**") filed by the Defendants, Lake Wales Lodge #2391, Loyal Order of Moose, Inc. ("**Lodge**") and Moose International, Inc. ("**Moose**") (collectively, the "**Defendants**"), the responses in opposition (Doc. Nos. 19 & 20) (the "**Responses**") filed by the Plaintiffs, Sasha Rayburn and Sienna Wilkinson (the "**Plaintiffs**"), and the replies (Doc. Nos. 24 & 25) (the "**Replies**") filed by the Defendants. For the reasons set forth below, the Motions are **GRANTED IN PART AND DENIED IN PART**.

I.    **Introduction**

The two primary issues before the Court are: (1) whether the Plaintiffs' allegations regarding interstate commerce are sufficient to demonstrate "coverage" under the Fair

Labor Standards Act (the "**FLSA**"); and (2) whether the Plaintiffs have adequately pled the existence of an employer/employee relationship with Moose.

With respect to the first issue, the Plaintiffs must plead facts, which taken as true, demonstrate that the Defendants and/or the Plaintiffs are sufficiently involved in interstate commerce to trigger the protections of the FLSA. Here, the Plaintiffs allege that they processed credit card transactions and handled out-of-state goods while employed by the Defendants. Importantly, however, the Plaintiffs allegations lack any reference to direct commercial interactions with out-of-state merchants. Thus, the Plaintiffs' allegations are insufficient to trigger individual coverage under the FLSA.

As to the second issue, the Plaintiffs must plead, at a minimum, that the Defendants controlled their conditions of employment. Here, the Plaintiffs allege that both of the Defendants controlled the Plaintiffs' conditions of employment. Specifically, the Plaintiffs allege that Moose was authorized to, and did in fact, approve Lodge's decision to re-classify them as "volunteers," who were not eligible to receive overtime pay or minimum wages. Based on these allegations, the Plaintiffs have adequately pled the existence of an employment relationship with the Defendants.

II. **Background**

The Plaintiffs commenced this case by filing a *Complaint & Demand for Jury Trial* (Doc. No. 1) (the "**Complaint**") against the Defendants on January 21, 2016. Recognizing that the Complaint contained claims based on the Fair Labor Standards Act, the Court entered an FLSA scheduling order (Doc. No. 5) (the "**FLSA Scheduling Order**") on January 25, 2016. Pursuant to the FLSA Scheduling Order, the parties were required to exchange certain information and participate in a settlement conference before filing their case management report and commencing discovery. On February 17, 2016, the

Plaintiffs filed an *Amended Complaint & Demand for Jury Trial* (Doc. No. 12) (the "**FAC**"). The FAC contains the following causes of action: Count I – Recovery of Minimum Wages (FLSA); Count II – Recovery of Minimum Wages (Article X, Section 24, Fla. Const.); Count III – Recovery of Overtime Compensation (FLSA).

On March 2, 2016, the Defendants filed the Motions. Through the Moose Motion, Moose argues that the Plaintiffs failed to properly plead that Moose was their employer under the FLSA. Through the Lodge Motion, Lodge presents evidence that it does not generate sufficient revenues to qualify for enterprise coverage under the FLSA. Moreover, in both Motions, the Defendants argue that the Plaintiffs failed to allege that (1) they were individually engaged in interstate commerce, and (2) the Defendants operated a joint enterprise.

The Plaintiffs filed their Responses on March 30, 2016. The Plaintiffs deny that the FAC lacks sufficient allegations to state a claim under the FLSA and, with respect to the Lodge Motion, submit a declaration by the Plaintiffs' counsel stating that additional discovery is needed to adequately respond to Lodge's arguments regarding enterprise coverage (the "**Rule 56(d) Declaration**"). In particular, the Plaintiffs note that pursuant to the FLSA Scheduling Order, they were unable to conduct discovery prior to filing the Responses. The Defendants filed the Replies on April 11, 2016.

On April 18, 2016, the parties submitted a *Joint Report Regarding Settlement* (Doc. No. 26) advising the Court that all settlement efforts pursuant to the FSLA Scheduling Order had been exhausted and that they would immediately file a case management report. On April 18, 2016, the parties filed their *Case Management Report* (Doc. No. 27) and on April 19, 2016, the Court entered its *Case Management and Scheduling Order*

(Doc. No. 28) (the "**CMSO**"). The CMSO sets January 31, 2016 as the parties' discovery deadline, and March 17, 2017 as the dispositive motion deadline.

## III.    Legal Standard

### A.    Federal Pleading Standard

Federal Rule of Civil Procedure 12(b)(6) allows a complaint to be dismissed for failure to state a claim upon which relief can be granted. When reviewing a motion to dismiss, a court must "accept the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff." *Alvarez v. Attorney Gen. for Fla.*, 679 F.3d 1257, 1261 (11th Cir. 2012). Legal conclusions, as opposed to well-pled factual allegations, "are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

Courts apply a two-pronged approach when considering a motion to dismiss. *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010). First, a court must "eliminate any allegations in [a] complaint that are merely legal conclusions." *Id.* A court must then take any remaining well-pleaded factual allegations, "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* (internal quotations omitted). A complaint that does not "contain sufficient factual matter, accepted as true, to state a claim . . . plausible on its face" is subject to dismissal. *Id.* at 1289. Further, dismissal is warranted under Rule 12(b)(6) if, assuming the truth of the complaint's factual allegations, a dispositive legal issue precludes relief. *Neitzke v. Williams*, 490 U.S. 319, 326 (1989).

### B.    Conversion of Motion to Dismiss to Motion for Summary Judgment

Rule 12(d) states that "[i]f on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated

4

as one for summary judgment under Rule 56." FED. R. CIV. P. 12(d). The rule goes on to state that "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." *Id.* To that end, Rule 56(d) states that:

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition [to a motion for summary judgment], the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order.

FED. R. CIV. P. 56(d).

## IV. Legal Analysis

As noted previously, the two primary issues before the Court are: (1) whether the Plaintiffs' allegations regarding interstate commerce are sufficient to demonstrate "coverage" under the FLSA; and (2) whether the Plaintiffs have adequately pled the existence of an employer/employee relationship with Moose. The Court will address each issue in turn.

### A. Coverage under the FLSA

To establish jurisdiction under the FLSA, "the plaintiff employee must show either, (1) individual coverage --- that the employee was engaged in commerce or the production of goods for commerce; or (2) enterprise coverage --- that the employer was engaged in commerce or in the production of goods for commerce. *Guzman v. Irmadan, Inc.*, 551 F.Supp.2d 1368, 1370 (S.D. Fla. 2008). Thus, any "employee seeking coverage under the FLSA must either establish the enterprise's or the individual's engagement in interstate commerce." *Mayo v. Jean Nicole Hair Salons, Inc.*, 2015 WL 4751202, at *2 (M.D. Fla. Aug. 11, 2015).

### 1. Enterprise Coverage

"An employer is subject to enterprise coverage under the FLSA where it 'has employees engaged in commerce or in the production of goods for commerce and is an enterprise whose annual gross volume of sales made or business done is not less than $500,000." *Guzman*, 551 F.Supp.2d at 1370. In the FAC, the Plaintiffs allege that "each Defendant has had an annual gross volume of sales made or business done in excess of $500,000.00 per annum." (FAC, at ¶ 11). However, Lodge responds in the Lodge Motion that its "sales did not equal or exceed $500,000 from 2012 through 2015." (Lodge Motion, at 6). Moreover, the Defendants argue that they do not, together, constitute a joint enterprise for purposes of determining enterprise coverage. (Doc. No. 15, at 7). Thus, the Defendants ask the Court to dismiss the FAC and/or grant Lodge summary judgment due to the Plaintiffs' inability to establish enterprise coverage.

Upon review, the Defendants' arguments rely on materials outside of the pleadings and, as a result, will need to be treated as a motion for summary judgment. However, as noted in the Plaintiffs' Rule 56(d) Declaration, the Motions were filed while discovery was stayed under the FLSA Scheduling Order. In fact, discovery could not commence until after the filing of the CMSO on April 18, 2016. Thus, when the Plaintiffs filed the Responses on March 30, 2016, they had not had an opportunity to conduct discovery regarding the issue of enterprise coverage. In light of the foregoing, the Court will deny the Motions as to the issue of enterprise coverage without prejudice to Defendants' filing of a motion for summary judgment at a more appropriate time.[1]

---

[1] Having determined that the FAC sufficiently pleads enterprise coverage as to both Defendants, it is unnecessary to consider whether Moose and Lodge are a "joint enterprise" at this stage of the pleadings.

### 2. Individual Coverage

"A plaintiff seeking to establish individual coverage under the FLSA must show: (1) she was engaged in commerce; or (2) she was engaged in the production of goods for commerce." *Mayo*, 2015 WL 4751202, at *2. To engage in commerce, the employee must directly participate in the "actual movement of persons or things in interstate commerce by (i) working for an instrumentality of interstate commerce . . . or (ii) by regularly using the instrumentalities of interstate commerce." *Id.* (internal quotations omitted).

In practice, courts in this jurisdiction have dismissed FLSA claims where the employees' involvement in interstate commerce consisted solely of processing credit card transactions and/or handling goods that had previously crossed state lines. For instance, the plaintiff in *Mayo* claimed individual coverage based on having communicated with out-of-state customers via telephone and processed credit card information to finalize sales. *Id.* at *2-3. In that case, Judge Chappell determined that the plaintiffs' allegations were insufficient to satisfy the individual coverage requirement and, as a result, dismissed the plaintiffs' FLSA claim without prejudice. *Id.* Similarly, in *Navarro v. Broney Automotive Repairs, Inc.*, Judge Jordan entered summary judgment against an automobile mechanic whose FLSA claim was predicated on having picked-up auto parts from local distributors and installed them on customers' vehicles. 533 F.Supp.2d 1223, 1225-27 (S.D. Fla. 2008). In that case, the court observed that regardless of whether the auto parts were manufactured outside of the state, they ceased to be involved in commerce upon being delivered to and stored by the local distributors. *Id.* at 1226. Since the auto mechanic dealt only with the local distributors, as opposed to out-of-state merchants, the court held that the plaintiff had failed to establish individual coverage under the FLSA. *Id.* at 1227.

Here, the Plaintiffs' allegations of individual coverage consist of allegations that they processed credit card transactions and handled goods that had previously traveled in interstate commerce. (FAC, at ¶ 13). As noted above, these allegations, even taken as true, are insufficient to establish individual coverage under the FSLA. Nevertheless, in their Responses, the Plaintiffs elaborate that they (i) "regularly placed orders of . . . food produced by out-of-state sources, including . . . products produced by Snyder's-Lance, headquartered out of North Carolina," and (ii) "routinely accepted deliveries from out-of-state sources on behalf of Defendants." (Doc. No. 20, at 10). Importantly, unlike in *Navarro* where the only evidence of individual coverage consisted of interactions between the employee and in-state distributors, the foregoing allegations, taken as true, indicate direct commercial interaction between the Plaintiffs and out-of-state merchants. At this stage of the pleadings, the Court is satisfied that allegations of direct commercial interaction between the Plaintiffs and out-of-state merchants are sufficient for purposes of pleading individual coverage under the FSLA. Thus, to the extent that the Plaintiff wishes to proceed under a theory of individual coverage, they are granted 30 days' leave to file a second amended complaint.

B. **Employment Relationship**

"To state a cause of action under the FLSA, an employee must first allege an employment relationship." *Crossley v. Armstrong Homes, Inc.*, 2015 WL 2238347, at *2 (M.D. Fla. May 12, 2015). "The FLSA defines an 'employer' as 'any person acting directly or indirectly in the interest of an employer in relation to an employee.'" *Id.* "Whether an individual is considered an employee is determined using an 'economic realities' test, which focuses on the 'economic realities of the individual case' by looking to the 'surrounding circumstances of the whole activity.'" *Id.* "Furthermore, an employee may

be jointly employed by several employers, who are all responsible for compliance with the FLSA." *Id.*

> Generally, a joint-employment relationship will be found where (1) 'an arrangement exists between the employers to share the employee's services,' (2) 'one employer acts directly or indirectly in the interest of the other employer (or employers) in relation to the employee,' or (3) 'the employers are not completely disassociated with respect to the employment of a particular employee and may deemed to share control of the employee, directly or indirectly, by reason of the fact that one employer controls, is controlled by, or is under common control with the other employer.'"

*Id.* In addition, courts consider the following factors in determining whether a joint-employment relationship exists:

> (1) the nature and degree of the putative employer's control of the workers; (2) the degree of supervision, direct or indirect, of the work; (3) the right, directly or indirectly, to hire, fire, or modify the workers' employment conditions; (4) the power to determine the workers' pay rates or methods of payment; (5) the preparation of payroll and payment of workers' wages; (6) the ownership of the facilities where the work occurred; (7) whether the worker performed a line job integral to the end product; and (8) the relative investment in equipment and facilities."

*Id.* (citing *Layton v. DHL Exp (USA), Inc.*, 686 F.3d 1172, 1176 (11th Cir. 2012)).

In the Moose Motion, Moose cites *Molina v. Hentech*, 2015 WL 1242790, at *2 (M.D. Fla. Mar. 18, 2015) for the proposition that "[t]o properly allege a joint employer scenario, the employee must set forth facts pertaining to the [eight *Layton*] factors" set forth above. (Moose Motion, at 2). Moose further argues, citing *Gavilan v. Balans, L.C.*, 2014 WL 6979625, at *2 (S.D. Fla. Dec. 9, 2014), that the FAC only contains conclusory allegations regarding the putative employment relationship between the Plaintiffs and Moose, thus warranting dismissal. Upon review, neither case supports Moose's argument. As an initial matter, *Molina* (and *Layton*, the case upon which it relies) was decided in the context of a motion for summary judgment; not under Rule 12(b)(6). *See Molina*, 2015 WL 1242790, at *1. As a result, *Molina* does not stand for the proposition

that a plaintiff must allege facts regarding each of the *Layton* factors to state a claim under the FLSA. To the contrary, as indicated by a close reading of *Gavilan*, there is no hard and fast rule for pleading the existence of an employment relationship under the FLSA. Rather, plaintiffs can state a claim by alleging facts demonstrating that the defendant hired or fired the plaintiff, supervised or controlled the plaintiff's work schedules or conditions of employment, or determined their rates and methods of payment. *Id.*

Here, the FAC contains, in pertinent part, the following allegations regarding the employer-employee relationship between the Defendants and Moose:

> 19. MOOSE acts as the headquarters in 'matters of common interest to all lodges and chapters, so there may be uniformity of operation in all matters pertaining to the lodge and chapter system.'
>
> 20. According to its bylaws, MOOSE acts as the 'corporate entity representing the system of lodges and chapters' and 'shall represent the corporate interests of the lodge and chapter system wherever the fraternity may operate.'
>
> 23. Defendants function as a single fraternal organization unit, whereby they intermingle assets, jointly make all financial decisions of significance with respect to the LAKE WALES LODGE, and follow a common set of rules and procedures as dictated by MOOSE.
>
> 25. At all times relevant hereto, MOOSE maintained and continues to maintain the right to control the overall business operations of LAKE WALES LODGE, and to participate in decisions of significance with regard to the operations of LAKE WALES LODGE.
>
> 26. Together, Defendants control and supervise their employees and also have the power to determine their rates of pay and to hire/fire them.
>
> 29. MOOSE retains control over the overall business operations of LAKE WALES LODGE.
>
> 35. "House Rules" created by LAKE WALES LODGE must be submitted to MOOSE for approval.
>
> 43. Defendants classified Plaintiffs as employees during one or more workweeks throughout the relevant time period (last three to five years).

> 44. Subsequent to their initial recognition that Plaintiffs were employees, the LAKE WALES LODGE house committee 'voted' to re-classify its bartenders as 'volunteers' and to no longer provide them with payroll checks. (*See* Attached memo as Exhibit A).
>
> 34. MOOSE approved the LAKE WALES LODGE decision to re-classify its bartenders as volunteers and approved its decision to cease paying its bartenders, including Plaintiffs, any direct wages whatsoever.

Moreover, as noted above in paragraph 44 of the FAC, the Plaintiffs attached a memorandum to the FAC, presumably authored by Lodge, stating that:

> "Attention: To all Bartenders.  Effective pay period ending on June 29th 2014 will be the last payroll check you will receive.  Because beginning on July 1, 2014 Lake Wales Moose Lodge # 2391 House Committee has voted on going back to Volunteers workers only.  Please sign below if you want to continue working here at the Lodge."

Taken together, the foregoing allegations plausibly suggest an employer-employee relationship between the Plaintiffs and Moose based on the criteria set forth in *Gavilan*. Specifically, the foregoing allegations, taken as true, plausibly suggest that Moose had authority to control the Plaintiffs' conditions of employment and to determine their rates and methods of payment through the requirement that it approve Lodge's "House Rules." As a result, the Moose Motion is denied as to the employment relationship requirement.

## V.     Conclusion

Accordingly, it is

**ORDERED** that the Motions are **GRANTED IN PART AND DENIED IN PART**. The Plaintiffs are granted 30 days' leave to file a second amended complaint regarding the issue of independent coverage.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida this 27th day of May, 2016.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Copies furnished to:

All Parties and Counsel of Record